[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *West Page 918 
[1] Defendant, Earl Anthony Vince, was indicted for aggravated rape. LSA-R.S. 14:42. After examination by a sanity commission, the court found him competent to stand trial. The trial jury found the defendant guilty as charged. Following a waiver of the statutory delay, the trial judge sentenced him to life imprisonment. Defendant appeals his conviction and sentence, relying upon 13 bills of exceptions.
[2] BILLS OF EXCEPTIONS NOS. 1 and 2
[3] Bills of Exceptions Nos. 1 and 2 were reserved when the court overruled the defendant's objections to the appointment of Dr. Sidney Montz and Dr. Elsa Tracey on the sanity commission. Defense counsel contends that Dr. Montz and Dr. Tracey were inexperienced in psychiatric matters and should not have been appointed. *West Page 919 
[4] The Louisiana Code of Criminal Procedure, Article 644, provides for the appointment of a sanity commission:
[5] "When a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least one and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment."
[6] Selection of physicians to serve on a sanity commission rests within sound discretion of the trial judge. State v. Gray,258 La. 852, 248 So.2d 313 (1971); State v. Marks, 252 La. 277,211 So.2d 261; death sentence vacated 408 U.S. 933, 92 S. Ct. 2849, 33 L.Ed.2d 746 (1968); State v. Graves, 247 La. 683,174 So.2d 118 (1965).
[7] The codal article contains no requirement that the physicians appointed be psychiatrists. It is sufficient that they be licensed to practice medicine in Louisiana and that they have been in actual practice for not less than three years, consecutively, immediately preceding appointment. State v. Cloud,246 La. 658, 166 So.2d 263 (1964).
[8] The physicians, Dr. Montz and Dr. Tracey, met the requirements set forth in the Louisiana Code of Criminal Procedure. Hence, the trial judge did not abuse his discretion in appointing them to the commission.
[9] Bills of Exceptions Nos. 1 and 2 are without merit.
[10] BILL OF EXCEPTIONS NO. 3
[11] This bill was reserved to the court's refusal to compel the state to answer certain questions in the defense motion for a bill of particulars. The State declined to answer the following questions:
[12] "2. At what hour, on what date and at what place or address was defendant booked or charged with this offense.
[13] "9. Give the names and addresses of the eye witnesses, if any, who were present or saw the alleged offense."
[14] The trial judge has considerable latitude in ruling upon requests in a motion for a bill of particulars. His ruling will not be disturbed absent a clear showing of abuse of discretion resulting in prejudice to the defendant. State v. Bailey, 261 La. 831,261 So.2d 583 (1972); State v. Pratt, 255 La. 919, 233 So.2d 883
(1970); State v. Sheffield, 201 La. 1055, 10 So.2d 894
(1942).
[15] The function of a bill of particulars is to inform the defendant more specifically of the nature of the charge against him. It cannot be used as a device to secure the details of the State's evidence or collateral information. LSA C.Cr.P. Art. 484; State v. Womack, La., 283 So.2d 708 (1973); 12 La.L.Rev. 457.
[16] It is well established that the State has no obligation to furnish the defendant with information concerning witnesses it intends to use. State v. Browning, La., 290 So.2d 322 (1974); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967). Police booking information at the law enforcement agency likewise falls outside the scope of the bill of particulars.
[17] The showing is insufficient to demonstrate an abuse of his discretion in refusing to require the State to answer the questions presented in the bill of particulars.
[18] Bill No. 3 has no merit.
[19] BILL OF EXCEPTIONS NO. 4
[20] This bill was reserved when the trial court judge refused to suppress evidence obtained pursuant to a search warrant. *West Page 920 
[21] The defendant contends that the affidavit supporting the search warrant is inadequate to establish probable cause; hence, the physical evidence seized under the warrant should be suppressed. He relies upon Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[22] The decisions of the United States Supreme Court announce the principle that the showing must contain sufficient underlying facts and circumstances to enable the magistrate to review them and make the essential probable-cause determination. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); State v. Paciera, La., 290 So.2d 681
(1974).
[23] In United States v. Ventresca, supra, the Court adopted a rule of reason in reviewing the showing of probable cause when it stated:
[24] "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (380 U.S. p. 108, 85 S.Ct. p. 746, 13 L.Ed.2d p. 689).
[25] The affidavit in the present case consists of four legal-sized sheets, single spaced, containing a lengthy description of an investigation leading to the identification of the defendant as the perpetrator of the crime. Without detailing the contents, it is evident that the affidavit is factual and contains adequate information to justify the issuance of a search warrant.
[26] Bill of Exceptions No. 4 has no merit.
[27] BILL OF EXCEPTIONS NO. 5
[28] This bill of exceptions was reserved when the trial judge refused to grant a mistrial. Defense counsel argues that a mistrial should have been granted because the jury was allowed to see certain evidence irrelevant to the case, when the evidence clerk was removing certain objects pertinent to this trial from a cardboard box.
[29] The trial judge did not err in denying the motion for a mistrial. There was no showing that the jurors actually saw the other evidence in the box. Moreover, even assuming that the jurors saw the other evidence, there was no showing that prejudice resulted. In the absence of prejudice, this Court will not disturb the conviction. C.Cr.P. art. 921. See also: State v. Giles, 253 La. 533, 218 So.2d 585 (1969).
[30] Bill of Exceptions No. 5 lacks merit.
[31] BILL OF EXCEPTIONS NO. 6
[32] This bill was reserved when the trial judge overruled an objection to the admission of certain photographs into evidence. Defense counsel objected to the admission of the photographs on the ground that the proper foundation was not presented.
[33] As a general rule, the courts will admit photographs into evidence when they are shown to be a correct representation of the subject and tend to shed light upon the transactions before the court. State v. Nunnery, La., 288 So.2d 624 (1974); State v. Jefferson, La., 284 So.2d 882 (1973); State v. Giles, supra.
[34] Since the photographs in question fulfill these requirements, the trial judge properly admitted them into evidence.
[35] This bill has no merit. *West Page 921 
[36] BILL OF EXCEPTIONS NO. 7
[37] The defendant reserved Bill of Exceptions No. 7 to the overruling of his motion to bar testimony concerning a line-up identification on the ground the defendant had no attorney at the line-up.
[38] The line-up to which objection was made was held at the New Orleans Police Department shortly after defendant's arrest and before his transfer to Jefferson Parish. No indictment had yet been filed against him.
[39] In Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the counsel requirement was inapplicable to a line-up held before a person was indicated or formally charged. That decision is applicable here.
[40] We conclude that Bill of Exceptions No. 7 is without merit.
[41] BILL OF EXCEPTIONS NO. 8
[42] The defendant reserved Bill of Exceptions No. 8 at the conclusion of the testimony of Harold Lambert, an investigator in the Jefferson Parish Coroner's office. Defense counsel objected to the testimony as hearsay and moved that it be stricken.
[43] The motion to strike testimony is unknown to the criminal procedure of Louisiana. To bar testimony at the trial, a contemporaneous objection is required. LSA-C.Cr.P. Art. 841; State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
[44] In the present case, defense counsel made an objection to a question addressed to the witness early in his testimony. This objection, however, was sustained. The present objection and motion to strike came at the conclusion of the witness' testimony.
[45] The objection came too late to raise a reviewable evidentiary question. Nonetheless, we have examined the evidence and find no inadmissible hearsay.
[46] Bill of Exceptions No. 8 lacks merit.
[47] BILLS OF EXCEPTIONS NOS. 9, 10, and 11.
[48] The defense reserved Bills of Exceptions Nos. 9 and 10 when, over objection, the trial court allowed Bonnie Viosca, a 13-year-old girl, and Josette Kopelman, a 15-year-old girl to testify as to incidents in which defendant raped them.
[49] Bill No. 11 was reserved when the District Attorney referred to these offenses in closing argument.
[50] The defense relies upon State v. Moore, La., 278 So.2d 781
(1973) and State v. Prieur, La., 277 So.2d 126 (1973).
[51] This case was tried before the decision in State v. Prieur, supra; hence, the procedural requirements relating to the use of other offenses announced in that decision are inapplicable here. The use of other offenses here, however, must be tested under the principles announced in State v. Moore.[1]
[52] The Court in State v. Moore, supra, announced two requirements for the admission of evidence of other crimes. The evidence must be relevant to an issue in the case, and its probative value must outweigh its prejudicial effect.
[53] LSA-R.S. 15:446 provides:
[54] "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of *West Page 922 
similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
[55] According to the testimony of the prosecuting witness, the defendant approached her and asked her help in finding his dog. Keeping up this pretense, he led her away from the school building. He then proceeded to pull a gun, to rape her and to take her jewelry. This offense occurred on May 23, 1972.
[56] The testimony of Bonnie Viosca was to the effect that a man asked her to help him find his dog in a vacant lot down the street. She went with him and he eventually pulled a gun and raped her. He also asked her if she had any jewelry. She identified the defendant as the man who raped her. This occurred on June 13, 1972.
[57] The testimony of Josette Kopelman was to the same effect — a man, whom she identified as the defendant, asked for her help in finding his dog, proceeded to lure her to a deserted area, and raped her. He also asked if she had any jewelry or money. No gun was involved. This occurred on June 23, 1972.
[58] The rape charged, as well as the two additional rapes sought to be shown, all involved young girls. The rapes occurred within a short time of each other in the same general area of Metairie, Louisiana. The assailant used the same system in each case.
[59] In the case, identification of the defendant was a serious issue. Quite clearly, the evidence was relevant to that issue. The showing of a common system and the identification of the defendant in the other two offenses strengthens identification in the present prosecution.
[60] As the trial judge noted:
[61] "[I]n cases of this serious nature, and in the interest of justice, it is most important that all evidence which relates to identity of the accused be received by the jury. System or modus operandi is one method of assuring the conviction of the proper defendant for an offense and allays the fear attendant at all trials of possible conviction of an innocent person."
[62] The testimony of the two girls was elicited in a non-inflammatory manner and composes only 12 pages of a 276 page transcript.
[63] In our opinion, the testimony satisfies the admissibility requirements of the jurisprudence. See State v. Moore, supra; State v. Jordan, La., 276 So.2d 277 (1973); State v. Wideman,218 La. 860, 51 So.2d 96 (1951). Since the evidence was properly admitted, it was not improper for the State to refer to it in closing argument.
[64] Bills Nos. 9, 10, and 11 have no merit.
[65] BILL OF EXCEPTIONS NO. 12
[66] The defense reserved Bill of Exceptions No. 12 to the overruling of a motion in arrest of judgment, filed after verdict. The motion was based upon the allegation that the trial judge's charge to the jury did not include all the provisions as to qualifying the verdict set forth in Article 817 of the Louisiana Code Criminal Procedure, as amended by Act 502 of 1972.
[67] An objection to the jury instructions cannot be raised by a motion in arrest of judgment. Article 859 of the Louisiana Code of Criminal Procedure provides:
[68] "The court shall arrest the judgment only on one or more of the following grounds:
[69] "(1) The indictment is substantially defective, in that an essential averment is omitted;
[70] "(2) The offense charged is not punishable under a valid statute;
[71] "(3) The court is without jurisdiction of the case; *West Page 923 
[72] "(4) The tribunal that tried the case did not conform with the requirements of Section 41 of Article VII of the Louisiana Constitution;
[73] "(5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
[74] "(6) Double jeopardy, if not previously urged; or
[75] "(7) The prosecution was not timely instituted, if not previously urged.
[76] "Improper venue may not be urged by a motion in arrest of judgment."
[77] These grounds for arrest of judgment are exclusive. They do not include deficiencies in the trial judge's instructions to the jury. As to such deficiencies, a contemporaneous objection at the time of the instructions is required. LSA-C.Cr.P. Art. 841.
[78] Moreover, the trial judge instructed the jury that it could qualify its verdict by adding "without capital punishment." This instruction was correct under the provisions of Article 817 in effect at the time the crime was committed. Act 502 of 1972, adding an additional qualification, "without capital punishment or benefit of parole, probation, . . . or suspension of sentence" became effective later and was inapplicable in the present case.
[79] Bill of Exceptions No. 12 has no merit.
[80] BILL OF EXCEPTIONS NO. 13
[81] This bill resulted when the trial court judge overruled defense counsel's motion for a new trial.
[82] The defendant argues that a new trial should have been granted because: (1) the court failed to admonish or instruct the jury relative to a discussion of the case among themselves and (2) the verdict was contrary to the law and evidence.
[83] Absent a showing that the jurors discussed the case among themselves, there exists no prejudicial error and, hence, no grounds for a new trial. State v. McCauley, La.,272 So.2d 335
(1973).
[84] In the present case, defense counsel neither alleged nor proved such a discussion. The trial court did not err in its refusal to grant a new trial on this ground.
[85] It is well established that the allegation by the defendant that the verdict is contrary to the law and evidence presents nothing for our review. LSA-C.Cr.P art. 858; State v. Causey,261 La. 1074, 262 So.2d 326 (1972); State v. Fisher, 261 La. 701,260 So.2d 674 (1972); State v. McClain, 254 La. 56, 222 So.2d 855, cert. den. 399 U.S. 911, 90 S.Ct. 2205, 26 L.Ed.2d 566 (1969).
[86] Bill of Exceptions No. 13 is unfounded.
[87] For the reasons assigned, the conviction and sentence are affirmed.
[88] BARHAM, J., concurs in the result.
[1] The author of this opinion dissented in State v. Moore. However, since four members of the Court adhere to that decision, he must apply it when writing an opinion as organ of the Court.